David Sanford (DC Bar No. 457933, *Pro Hac Vice forthcoming*)
dsanford@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
1666 Connecticut Ave. NW, Suite 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199

Jill Sanford (CA Bar No. 185757)
jsanford@sanfordheisler.com
Edward Chapin (CA Bar No. 53287)
echapin2@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
655 W Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4253
Facsimile: (619) 677-4250

Jeremy Heisler (NY Bar No. 1653484, *Pro Hac Vice forthcoming*)
jheisler@sanfordheisler.com
Alexandra Harwin (DC Bar No. 1003018, *Pro Hac Vice forthcoming*)
aharwin@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651

*Attorneys for Plaintiff and the Classes*
[*Additional Attorneys Listed After Signature Page*]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAWN KNEPPER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.<br><br>Defendant. | **Case No.: 3:18-CV-00304**<br><br>**DECLARATORY JUDGMENT COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE CASE

1. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, and Rule 57 of the Federal Rules of Civil Procedure.

2. Plaintiff Dawn Knepper (the "Plaintiff") is a non-equity shareholder in the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (the "Defendant" or "Ogletree" or the "Firm"). She brings this action contemporaneously with a gender discrimination action, Case No. 3:18-cv-00303 (N.D. Cal. Jan. 12, 2018), (the "Underlying Action" or the "Gender Discrimination Action") that seeks damages and equitable relief from Defendant Ogletree. In the Gender Discrimination Action, Plaintiff alleges that Ogletree practices a pattern of discrimination against female non-equity shareholders in pay, promotion, and other terms and conditions of their employment. The Gender Discrimination Action is based on federal and state law claims and is also filed in the Northern District of California.

3. Plaintiff and Defendant (collectively, the "Parties") dispute the formation of any purported agreement to arbitrate the claims alleged in the Underlying Action. Ogletree maintains the Parties are bound by an arbitration agreement, and thus, have an obligation to arbitrate the claims asserted in the Gender Discrimination Action. Plaintiff maintains, however, that there is no arbitration agreement obligating the Parties to arbitrate and Plaintiff may therefore litigate her discrimination claims in court. As alleged below, the Plaintiff never signed, or otherwise assented to, any arbitration agreement, and thus, no agreement to arbitrate any issue was ever formed.

4. Plaintiff now seeks a declaratory judgment that no agreement between the Parties was ever formed to 1) arbitrate the claims in the Gender Discrimination Action, 2) delegate authority to decide issues of arbitrability to an arbitrator, and/or 3) waive the Plaintiff's rights to bring a class or collective action against Defendants. Alternatively, Plaintiff seeks a declaratory judgment that, to the extent an arbitration agreement between the Parties was formed, the provisions purporting to 1) waive Plaintiff's rights to bring a class or collective action against the Defendant, or 2) delegate issues of arbitrability to an arbitrator are unenforceable.

5. Plaintiff also seeks a declaratory judgment that this Court has the authority to issue judgment on all of Plaintiff's causes of action brought in this Complaint for Declaratory Judgment.

**THE PARTIES**

6. Plaintiff Dawn Knepper ("Plaintiff Knepper" or "Ms. Knepper") is a female attorney and non-equity shareholder in Ogletree's Orange County office.

7. Plaintiff Knepper has been employed by Ogletree since approximately June 1, 2005.

8. Defendant Ogletree is a law firm with offices worldwide, including six offices in California. Ogletree's California offices are located in Los Angeles, Orange County, Sacramento, San Diego, San Francisco, and Torrance. Ogletree employs over 100 attorneys in California.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

10. An actual controversy exists between the Parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.

11. This action concerns the issue of whether the Plaintiff may litigate her federal claims in the Gender Discrimination Action in federal court, and jurisdiction is therefore proper under 28 U.S.C. § 1331.

12. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. The U.S. District Court for the Northern District of California has personal jurisdiction over the Defendant because the Defendant has offices in the Northern District of California and does business in the Northern District of California, and many of the acts complained of and giving rise to the claims alleged herein occurred in California.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant conducts substantial business in San Francisco and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.

**FACTUAL ALLEGATIONS**

15. Ogletree is one of the largest labor and employment law firms in the United States. It specializes in defending employers against individual and class action employment lawsuits, including lawsuits for discrimination.

16. As set forth in the Plaintiff's Complaint in the Gender Discrimination Action, Ogletree systematically discriminates against its female non-equity shareholders.

17. Specifically, Ogletree has created and fostered a male-dominated culture in which male shareholders are grossly over-represented in the Defendant's management and leadership structure.

18. Ogletree discriminates against female non-equity shareholders through formal policies and widespread practices that limit, interfere with, or prevent female non-equity shareholders from receiving the credit they deserve for the business that they generate for the Firm and the hours of work that they spend litigating complex cases. Female non-equity shareholders do not receive equal or comparable pay to their male counterparts, even where they outperform their male counterparts.

19. Ogletree's male-dominated leadership also engages in widespread practices that limit female non-equity shareholders' ability to develop business and create and maintain professional contacts. Ogletree employs "shoulder-tapping" methods that disproportionately favor male attorneys in selection for firm-supported business development opportunities and networking events.

20. By bringing the Underlying Action on behalf of herself and similarly-situated female non-equity shareholders, Plaintiff seeks to rectify the professional and economic wrongs that the Defendant has inflicted on the female non-equity shareholders currently or formerly employed by the Defendant.

21. On December 19, 2017, counsel for Defendant sent counsel for Plaintiff a letter stating that named Plaintiff is "bound by a 'Mutual Arbitration Agreement'" ("Mutual Arbitration Agreement" or "MAA"), and "must first submit [her] disputes to arbitration."

22. Defendant stated in its letter of December 19, 2017, "Ogletree will take all required steps to enforce these arbitration covenants and to recover from anyone who fails to honor her agreement to be bound by such arbitration covenants."

23. Plaintiff maintains that there is no arbitration agreement obligating the Parties to arbitrate.

24. Based on these facts, an actual controversy exists between the Parties regarding the purported arbitration agreement raised in Defendant's letter.

i. <u>Plaintiff Did Not Sign, or Otherwise Assent to, the Mutual Arbitration Agreement</u>

25. No agreement to arbitrate was formed by the Mutual Arbitration Agreement. The Mutual Arbitration Agreement affirmatively requires a signature, and the Plaintiff never signed it, or otherwise assented to it.

26. On Friday, January 15, 2016 at 4:45 AM (P.S.T.), Defendant sent an email bearing the subject line "IMPORTANT – Two New Programs for 2016" (the "January 2016 email"), to all of its shareholders. Although there was no indication in the subject heading of the email that it contained any information regarding an arbitration agreement, the email included, as an attachment, the Mutual Arbitration Agreement.

27. The first paragraph of the Mutual Arbitration Agreement states that the agreement is between "Ogletree Deakins (the 'Firm') **and the undersigned** ('Individual')," establishing that a signature is necessary to form an agreement between the Parties (emphasis added).

28. The Mutual Arbitration Agreement also states:

> **12. Miscellaneous.** This is the complete agreement between the Parties on the subject of arbitration and supersedes any other understandings on the subject. No representations, oral or written, are being relied upon by either Party **in executing this Agreement**, other than those contained herein.
>
> (emphasis added).

This language confirms that "execution," i.e. signature, is a necessary precondition to formation of the Mutual Arbitration Agreement.

29. The Mutual Arbitration Agreement further requires a signature in the final paragraph, which states:

> **Special Note**: *This Agreement is an important document that affects your legal rights. You should familiarize yourself with it.* ***By signing below***, *you acknowledge that you understand you have the option to opt out of this Agreement by returning an Opt Out form to the Director of Human Resources on or before March 1, 2016 and that failure*

*to return an Opt Out form and remaining in the employment of the Firm after that date will be deemed an acceptance of this Agreement.*

(emphasis added).

30. The bottom of the Mutual Arbitration Agreement includes a line for both "Signature" and "Date."

31. The Plaintiff never signed or executed the Mutual Arbitration Agreement.

32. Plaintiff did not realize at the time that the January 2016 email contained a Mutual Arbitration Agreement. Plaintiff did not otherwise assent to the Mutual Arbitration Agreement, and had no knowledge of its existence until well after the deadline the Firm gave to opt out of the Mutual Arbitration Agreement.

ii. <u>The Parties Never Formed an Agreement to Delegate any Authority to an Arbitrator to Determine Arbitrability of this Controversy</u>

33. Section 6 of the Mutual Arbitration Agreement is titled "Authority of the Arbitrator" (the "delegation provision") and purports to delegate to an arbitrator the authority to determine issues of "interpretation, applicability, enforceability, or formation" of the Mutual Arbitration Agreement.

34. As discussed in paragraphs 25-31, by Defendant's own terms, signature is a precondition to the formation of the Mutual Arbitration Agreement, including the delegation provision. No signatures exist. Hence, no agreement to delegate authority to an arbitrator to decide issues of arbitrability was formed by the Mutual Arbitration Agreement.

35. Further, the Mutual Arbitration Agreement does not clearly and unmistakably delegate questions of arbitrability to the arbitrator.

36. Section 12 of the Mutual Arbitration Agreement states "If any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render the Agreement valid and enforceable."

37. Because this section does not clearly and unmistakably delegate to an arbitrator the authority to rule on the validity or enforceability of the Mutual Arbitration Agreement, it does not prevent this Court from hearing and ruling on issues of formation, validity, or enforceability of the Mutual Arbitration Agreement.

     iii.     <u>The Parties Never Formed an Agreement to Waive the Right to Bring Class or Collective Actions, and Such a Provision is Unenforceable</u>

38. A sub-section of Section 6 of the Mutual Arbitration Agreement purports to waive the Parties' ability to proceed as a class or collective action. The sub-section states:

> Because this Agreement is intended to resolve the particular dispute as quickly as possible, the arbitrator shall not have the authority to consolidate the claims of other individuals into a single proceeding, to fashion a proceeding as a class, collective action, or representative action, or to award relief to a class or group of claimants. Notwithstanding anything herein or in AAA's rules to the contrary, any dispute relating to the interpretation, applicability, or enforceability of this paragraph shall be resolved by a court only and shall not be within the power of the arbitrator to resolve.

39. For the reasons stated in paragraphs 25-31, by Defendant's own terms, signature is a precondition to the formation of the Mutual Arbitration Agreement, including the purported class waiver provision in Section 6. No signatures exist. Hence, no agreement to waive Plaintiff's rights to bring a class or collective action was formed by the Mutual Arbitration Agreement.

40. To the extent that it is found that the Mutual Arbitration Agreement formed a contract between the Plaintiff and the Defendant, any provision that seeks to waive Plaintiff's right to bring class or collective claims is unenforceable under state and federal law.

     iv.     <u>The Mutual Arbitration Agreement, With All its Provisions, is Unenforceable</u>

41. The Mutual Arbitration Agreement, including the delegation provision and class waiver provision in Section 6, is unconscionable and the product of fraud.

42. The Mutual Arbitration Agreement was presented to Plaintiff in a surreptitious and oppressive manner. It was attached to a misleading email with the subject line "IMPORTANT – Two New Programs for 2016" that did not reasonably inform the Plaintiff that the email attachments contained a purported arbitration agreement, including, specifically, the delegation provision and class waiver provision in Section 6.

43. The Mutual Arbitration Agreement, and each separate provision within, is a contract of adhesion. Plaintiff was never required to give any affirmative indication of receipt or assent to the

delegation provision. This is evidenced by the fact that Plaintiff never signed, or acknowledged, the Mutual Arbitration Agreement, or any separate provision within. Plaintiff was not provided any opportunity for negotiation of the terms of the Mutual Arbitration Agreement, and each separate provision within, but rather was presented with the terms in a take it or leave it fashion.

44. Furthermore, the arbitration agreement and the delegation provision are so unjustifiably one-sided that they shock the conscience. The contract provisions are buried in the text of a document attached to a misleading email, and purport to strip the non-drafting party of significant rights, including the right to vindicate claims in court, the right to pursue claims as part of a class or collective action, and the right to challenge her purported yielding of nearly all authority interpreting these rights to an arbitrator.

v. <u>This Court Should Determine the Formation, Validity, and/or Enforceability of the Mutual Arbitration Agreement</u>

45. The Parties never formed any binding contract to delegate authority to an arbitrator to decide issues of formation, validity, and/or enforceability of the Mutual Arbitration Agreement. Thus, it should be left to this Court to make the determinations on the Plaintiff's requests for declaratory judgment in this action.

46. In addition, by Ogletree's own terms, the Mutual Arbitration Agreement delegates exclusive authority to the court to hear and resolve "any dispute relating to the interpretation, applicability, or enforceability of the" class waiver provision. By carving out certain issues to which the court is delegated authority in the third paragraph of the delegation provision, and delegating authority to the arbitrator regarding certain other issues, there is a danger of an arbitrator and court reaching conflicting conclusions as to the formation, validity, or enforceability of certain provisions of the purported Mutual Arbitration Agreement.

47. The danger of inconsistent rulings makes an exclusive judicial forum imperative. Because the Parties agree that the authority to hear and decide at least part of the issues raised in this action is delegated to the court, this Court is the most reasonable forum to hear and decide all of the related issues raised in this action.

## CAUSES OF ACTION

### COUNT I

**Declaratory Judgment that the Parties Never Formed an Agreement to Arbitrate**

48. The Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

49. The Parties never formed an agreement to arbitrate. Plaintiff never signed, or otherwise assented to, any agreement to arbitrate disputes, and is under no obligation to arbitrate the claims alleged in the Gender Discrimination Action.

50. As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether the Parties ever formed an agreement to submit disputes to arbitration.

### COUNT II

**Declaratory Judgment that the Parties Never Formed an Agreement to Delegate Authority to an Arbitrator**

51. The Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

52. The Parties never formed an agreement to delegate issues of arbitrability to an arbitrator. Plaintiff never signed, or otherwise assented to, any delegation provision, and is under no obligation to bring issues of arbitrability before an arbitrator. Instead, this Court has the authority to issue judgment on all issues of formation, validity, and enforceability of any purported arbitration agreement.

53. Because of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether the Parties ever formed an agreement to delegate authority to an arbitrator to determine issues of arbitrability.

### COUNT III

**Declaratory Judgment that the Parties Never Formed an Agreement Waiving the Right to Bring Claims as Part of a Class or Collective Action**

54. The Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

55. The Parties never formed an agreement to waive Plaintiff's rights to bring a class or collective action. Plaintiff never signed, or otherwise assented to, any class waiver provision, and has the right to bring the Gender Discrimination Action as a class.

56. As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether the Parties ever formed an agreement to waive their rights to bring a class or collective action.

## COUNT IV

**Declaratory Judgment that the Class Waiver in the Mutual Arbitration Agreement is Unenforceable**

57. The Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

58. Should this Court find the Parties formed an agreement to arbitrate, any class waiver contained in the purported arbitration agreement is unconscionable and the result of fraud. Accordingly, it is unenforceable and not binding on the Parties.

59. Because of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether Plaintiff may bring her claims collectively on behalf a class.

## COUNT V

**Declaratory Judgment that the Mutual Arbitration Agreement is Unenforceable**

60. The Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

61. Should this Court find the Mutual Arbitration Agreement formed an agreement to arbitrate, it is unenforceable and not binding on the Parties.

62. As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether Plaintiff is obligated to arbitrate the claims raised in the Gender Discrimination Action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment as follows:

    a.    A declaration that the Parties never formed an agreement to arbitrate disputes, and that the Plaintiff may proceed to pursue her claims in the Gender Discrimination Action in federal court;

    b.    A declaration that the Parties never formed an agreement to delegate authority to an arbitrator to decide issues of arbitrability, and that this Court has the authority to issue judgment in this action;

    c.    A declaration that purported class waivers contained in the purported arbitration agreement are not binding on the Parties, and that the Plaintiff may proceed in her efforts to vindicate her collective rights; and

    d.    Any further relief to which the Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues so triable.

Dated: January 12, 2018              Respectfully submitted,

/s/ Jill Sanford
_____
Jill Sanford (CA Bar No. 185757)
Edward Chapin (CA Bar No. 53287)
David Sanford (*Pro Hac Vice forthcoming*)
Jeremy Heisler (*Pro Hac Vice forthcoming*)
Alexandra Harwin (*Pro Hac Vice forthcoming*)
SANFORD HEISLER SHARP, LLP

*Attorneys for Plaintiff and the Class*

[*Continued from Caption Page*]

James E. Richardson (NY Bar No. 4810735, *Pro Hac Vice forthcoming*)
jrichardson@sanfordheisler.com
Danielle Fuschetti (CA Bar No. 294065)
dfuschetti@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

*Attorneys for Plaintiff and the Classes*