1  NANCY L. ABELL (SB# 88785)
   nancyabell@paulhastings.com
2  DEBORAH S. WEISER (SB# 167132)
   deborahweiser@paulhastings.com
3  VALERIE M. MAREK (SB# 301540)
   valeriemarek@paulhastings.com
4  PAUL HASTINGS LLP
   515 South Flower Street, 25th Floor
5  Los Angeles, California  90071-2228
   Telephone:     (213) 683-6000
6  Facsimile:      (213) 627-0705

7  PAUL W. CANE, JR. (SB# 100458)
   paulcane@paulhastings.com
8  PAUL HASTINGS LLP
   101 California Street, 48th Floor
9  San Francisco, California  94111
   Telephone:     (415) 856-7000
10 Facsimile:      (415) 856-7100

11 Attorneys for Defendant
   OGLETREE, DEAKINS, NASH,
12 SMOAK & STEWART, P.C.

13

14                    UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16

17 DAWN KNEPPER, on behalf of herself      Case No. 3:18-CV-00303-WHO
   and all others similarly situated,
18                                          Case No. 3:18-CV-00304-WHO
                  Plaintiff,
19                                          **DEFENDANT'S NOTICE OF MOTION
       vs.                                  AND MOTION TO TRANSFER VENUE
20                                          PURSUANT TO 28 U.S.C. § 1404(a);
   OGLETREE, DEAKINS, NASH, SMOAK           MEMORANDUM OF POINTS AND
21 & STEWART, P.C.,                         AUTHORITIES**
                  Defendant.
22                                          Date:        June 13, 2018
                                            Time:        2:00 p.m.
23                                          Courtroom: 2, 17th Floor
                                            Judge:       Hon. William H. Orrick
24
                                            Complaint filed: January 12, 2018
25                                          Trial date:      Not yet set

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND .............................................................................. 3

    A.  Plaintiff's Claims Are Grounded In Orange County, Where Knepper Lives And Worked. .......................................................................................... 3

    B.  The Vast Majority Of Witnesses Are Located In The Central District; None Is In The Northern District. ..................................................................... 4

    C.  Knepper Is A Party To An Arbitration Agreement That Assigns To An Arbitrator In Orange County The Question Of The Agreement's Enforceability. ....................................................................................... 5

        1.  Irrefutable evidence disproves Knepper's claim that she did not know she had been presented with the Arbitration Agreement. ................. 5

        2.  The Arbitration Agreement assigns to the arbitrator in Orange County any issues concerning its enforceability. .................................. 6

III. ALL FACTORS WARRANT TRANSFERRING THESE RELATED CASES TO THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION .................. 7

    A.  Section 1404(a) Sets Forth The Standard For Transfer. ......................... 7

    B.  Each Of These Factors Militates In Favor Of Transfer............................ 8

        1.  Knepper's claims "might have been brought"—indeed, *should* have been brought (if brought in a court at all)—in the Central District. ........... 8

        2.  Transferring these related cases will promote the interests of justice and serve the convenience of the parties.................................... 9

            a.  The convenience of the parties and witnesses favors transfer. ......... 9

            b.  The Central District has a significantly greater relationship to these related actions than the Northern District. ............................. 10

            c.  The interests of justice strongly favor transfer to the Central District, as it is the only court that can enforce the parties' Arbitration Agreement as written and is less congested and backlogged for trial than the Northern District. .............................. 10

            d.  Even in the absence of the Arbitration Agreement (and forum-selection clause), Knepper's choice of forum would be entitled to little deference here. ............................................ 13

    C.  The Title VII Claim Pleaded Does Not Alter The Analysis Or Change The Result. .......................................................................................... 15

IV. CONCLUSION ............................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaka'i Mech. Corp. v. RMA Land Constr., Inc.,*
2014 WL 12729169 (D. Haw. Oct. 22, 2014) ...................................................................11

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,*
134 S. Ct. 568 (2013) ......................................................................................................13

*Barranco v. 3D Sys. Corp.,*
2014 WL 806263 (D. Haw. Feb. 28, 2014) .....................................................................11

*Commercial Lighting Prods., Inc. v. U.S. Dist. Court,*
537 F.2d 1078 (9th Cir. 1976) .........................................................................................8

*Commodity Futures Trading Comm'n v. Savage,*
611 F.2d 270 (9th Cir. 1979) ...........................................................................................7

*Decker Coal Co. v. Commonwealth Edison Co.,*
805 F.2d 834 (9th Cir. 1986) ...........................................................................................9

*Evancho v. Sanofi-Aventis U.S. Inc.,*
2007 WL 1302985 (N.D. Cal. May 3, 2007) ...................................................................12

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,*
820 F. Supp. 503 (C.D. Cal. 1992) ..................................................................................8

*Helicopteros Nacionales de Colom., S.A. v. Hall,*
466 U.S. 408 (1984).........................................................................................................8

*Hoffman v. Blaski,*
363 U.S. 335 (1960).........................................................................................................8

*Homestake Lead Co. v. Doe Run Res. Corp.,*
282 F. Supp. 2d 1131 (N.D. Cal. 2003) ..........................................................................11

*Hong v. Morgan Stanley & Co., LLC,*
2012 WL 5077066 (N.D. Cal. Oct. 18, 2012)..................................................................15

*In re: Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) ...........................................................................................12

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000) ...........................................................................................12

*Levine v. Entrust Grp., Inc.,*
2012 WL 6087399 (N.D. Cal. Dec. 6, 2012)...................................................................14

*Lexington Ins. Co. v. Centex Homes*,
   795 F. Supp. 2d 1084 (D. Haw. 2011) ........................................................2, 11

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) ........................................................14

*Marinus v. Altria Grp. Distrib. Co.*,
   2012 WL 588705 (N.D. Cal. Feb. 22, 2012) ........................................10, 14

*Mercury Serv., Inc. v. Allied Bank of Tex.*,
   117 F.R.D. 147 (C.D. Cal. 1987), *aff'd*,
   907 F.2d 154 (9th Cir. 1990) ........................................................7, 8

*Montante v. LaHood*,
   2013 WL 12184149 (S.D. Cal. Jan. 17, 2013) ........................................15

*Morris v. Safeco Ins. Co.*,
   2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ........................................9

*Multistate Legal Studies, Inc. v. Marino*,
   1996 WL 786124 (C.D. Cal. Nov. 4, 1996) ........................................12

*Pinckney v. Yuba Comm. Coll.*,
   2008 WL 5170444 (N.D. Cal. Dec. 9, 2008) ........................................16

*Roe v. Intellicorp Records, Inc.*,
   2012 WL 3727323 (N.D. Cal. Aug. 27, 2012) ........................................13

*Skyriver Tech. Solutions, LLC v. OCLC Online Comput. Library Ctr., Inc.*,
   2010 WL 4366127 (N.D. Cal. Oct. 28, 2010) ........................................9

*Textile Unlimited, Inc. v. A..BMH & Co.*,
   240 F.3d 781 (9th Cir. 2001) ........................................................2, 7, 10

*Van Dusen v. Barack*,
   376 U.S. 612 (1964) ........................................................7

*Williams v. Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) ........................................14

*Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*,
   2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) ........................................14

STATUTES

9 U.S.C. § 4 (FEDERAL ARBITRATION ACT) ........................................................2

28 U.S.C. § 1391(b)(2) ........................................................8

28 U.S.C. § 1391(c)(2) ........................................................8

28 U.S.C. § 1404 ................................................................................................................12, 15

28 U.S.C. § 1404(a) ........................................................................................................1, 3, 7, 9

29 U.S.C. § 206 (Equal Pay Act of 1963) ................................................................................3

42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964, ) ...............................3, 15, 16

29 U.S.C. § 201 (Fair Labor Standards Act (FLSA)) .........................................................12

Cal. Lab. Code § 1197.5 (California Equal Pay Act) ........................................................3

Cal. Lab. Code § 2698 (Private Attorneys General Act of 2004 (PAGA)) ...................4

**Rules**

Fed. R. Civ. P. 45 ..................................................................................................................12

**Other Authorities**

Federal Court Management Statistics
    http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.
    2017.pdf (last visited 4/15/2018) .......................................................................................13

## NOTICE OF MOTION AND MOTION

To plaintiff Dawn Knepper and her attorneys of record:

PLEASE TAKE NOTICE that on June 13, 2018, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, before the Honorable William H. Orrick, defendant Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree" or "the Firm"), will and hereby does move, pursuant to 28 U.S.C. section 1404(a), for an order transferring these related actions to the Central District of California, Southern Division.  Ogletree's motion is made on the grounds that the convenience of the parties and witnesses and the interests of justice require the related actions to be transferred.

The motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in these related actions, including the Declarations of Kay Straky, Vicki Myers, and Gary Berger, any accompanying exhibits submitted in support of the motion, and such other evidence and arguments as may be presented at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to a binding Mutual Arbitration Agreement ("Arbitration Agreement") between the parties, Plaintiff Dawn Knepper, an experienced employment-law litigator, entered into a binding Mutual Arbitration Agreement ("Arbitration Agreement") with Ogletree, the law firm in which she was a shareholder.  This Arbitration Agreement required her to arbitrate her claims against Ogletree where she worked, in Orange County, California.  In derogation of that Arbitration Agreement Knepper sued in the Northern District for no reason other than forum shopping and to impede Ogletree's ability to compel arbitration in the venue the Arbitration Agreement designated.  During all relevant times, Knepper has been (and continues to be) a

1  resident of Orange County, where she worked for Ogletree and the alleged conduct giving rise to

2  her claims took place.  The vast majority of third-party witnesses—as identified in Knepper's

3  own Complaint—live and work in the Central District.  These include the persons who allegedly

4  discriminated against, harassed, and retaliated against Knepper, the persons who supposedly

5  witnessed that conduct, the persons to whom Knepper supposedly complained, and former

6  employees on whose testimony Ogletree will rely.  All other witnesses to the alleged

7  wrongdoing, including persons who had input on Knepper's compensation, live and work

8  outside of California.  None lives or works in the Northern District.

9          Mindful of—but seeking to avoid—her arbitration commitment and its venue provision,

10  Knepper contemporaneously filed with her Complaint a Request for Declaratory Judgment

11  ("RDJ"), asking this Court to hold the Arbitration Agreement unenforceable.  In the RDJ (¶ 32),

12  Knepper represented to this Court that she did not know that an Arbitration Agreement had ever

13  been presented to her:  "[I] did not realize at the time that the January 2016 email contained a

14  Mutual Arbitration Agreement" and "had no knowledge of its existence until well after the

15  deadline the Firm gave to opt out of the Mutual Arbitration Agreement."  RDJ ¶ 32.  That was a

16  false representation—by an officer of this Court, yet—as Ogletree demonstrates below.  The

17  Arbitration Agreement is a threshold reason to transfer the matter to the Central District,

18  because only the Central District can compel arbitration in Orange County, the venue prescribed

19  by the Arbitration Agreement.  The Federal Arbitration Act, 9 U.S.C. § 4, provides:  "The

20  hearing and proceedings, under [an arbitration] agreement, shall be within the district in which

21  the petition for an order directing such arbitration is filed."  Section 4 "confines the arbitration to

22  the district in which the petition to compel is filed."  *Textile Unlimited, Inc. v. A..BMH & Co.*,

23  240 F.3d 781, 785 (9th Cir. 2001) (emphasis omitted).  The section "prohibits a district court

24  from ordering parties to arbitrate outside of the district in which a motion to compel is filed."

25  *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1091 (D. Haw. 2011) (where

26  arbitration agreement specified venue outside the district where petition was filed, the court

27  acknowledged that it could order arbitration only within its own district, so it transferred the

28  case).

Even laying aside the Arbitration Agreement, the multiple factors relevant to transfer under 28 U.S.C. section 1404(a) overwhelmingly point to the Central District:

*First*, Knepper could (and should) have filed these related actions there because they arise from her employment with Ogletree in the Central District, and the events giving rise to Knepper's claims occurred there. *Second*, the vast majority of material witnesses (both party and nonparty) are located in the Central District, where Knepper worked. *Third*, Knepper's preferred forum places an undue burden on Ogletree, its employees and other witnesses who will be forced to travel (and incur related costs) if forced to litigate in the Northern District. *Fourth*, the interest of justice strongly favors transfer, as Ogletree demonstrates below.

Accordingly, Ogletree respectfully requests that this Court transfer these related cases to the Central District of California, where venue is proper.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Claims Are Grounded In Orange County, Where Knepper Lives And Worked.

Ogletree is a labor and employment law firm, incorporated in South Carolina and maintaining offices in 28 states, and the District of Columbia, with its largest offices in Raleigh, North Carolina, Los Angeles, California and Atlanta, Georgia. Straky Decl. ¶ 2. In 2005, Knepper began working as an associate in Ogletree's San Antonio, Texas office. Cmplt. ¶ 56. On January 1, 2012, Knepper moved to Ogletree's Orange County office and became a shareholder at that time. *Id.* According to Knepper, when she "arrived in the Orange County Office, she began experiencing disparate treatment and hostility from the office's male leadership—most notably from Keith Watts, the Orange County Office's managing shareholder." Cmplt. ¶ 57.

Knepper alleges that she and similarly situated non-equity female shareholders throughout the country were discriminated against on the basis of gender. She asserts class, collective, and representative action claims against Ogletree for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 206, and related California statutes, including California's Equal Pay Act (Labor Code

section 1197.5) and the Labor Code Private Attorneys General Act of 2004 (Labor Code section 2698 *et seq.*).[1]

**B.      The Vast Majority Of Witnesses Are Located In The Central District; None Is In The Northern District.**

Knepper alleges that Watts, the managing shareholder in Orange County, discriminated against, harassed, and retaliated against her.  Cmplt. ¶¶ 41-42, 71, 73, 76, 78-80, 83-85, 96-97, 104-106, 108-109.  Other alleged discriminators, harassers, or witnesses include fellow Orange County colleagues Kevin Bland, who allegedly made inappropriate comments of a sexual nature in the presence of Orange County employees and shareholders, Cmplt. ¶¶ 102, 110-111, and Vincent Verde, who allegedly witnessed and/or contributed to the retaliation and hostile work environment, Cmplt. ¶¶ 106, 108.  Knepper further alleges that she repeatedly complained about the alleged retaliatory conduct to Managing Director Joe Beachboard, who then worked and continues to work in Torrance, in the southwest part of Los Angeles County.  Cmplt. ¶¶ 106, 109; Straky Decl. ¶ 7.

Knepper alleges she was underpaid compared to (i) Watts (Orange County); (ii) Kevin Bland (Orange County); (iii) Verde (Orange County); (iv) Evan Moses (Los Angeles); (v) Matt Effland (Los Angeles during the relevant time; currently residing and working in Indiana); (vi) Greg Cheng (San Francisco); (vii) William Duda (Columbia, South Carolina); (viii) Bernhard Mueller (Columbia, South Carolina); and (ix) Scott Kelly (Birmingham, Alabama).  Straky Decl. ¶ 7.  In short, of the nine alleged male comparators, five worked and resided in the Central District of California, and three worked in other states.  Only one worked in the Northern District.

Knepper alleges that she complained about her compensation to multiple members of Ogletree's Board of Directors and Compensation Committee.  Cmplt. ¶¶ 68, 70, 72, 92.  She also alleges she complained during shareholder compensation interviews.  Cmplt. ¶ 75.  All members of the Compensation Committee and Board of Directors during the relevant time

---

[1] Of her nine causes of action, four allege violations of California law; three allege violations of federal law, and two allege violations of both California and federal law.  Cmplt.

worked and lived (and continue to work/live) outside of California, except Beachboard who has worked and lived in the Central District at all times relevant to these related actions.  Straky Decl. ¶¶ 3, 7, 8, 10.  All relevant in-person meetings by those bodies took place outside of California.  *Id.* ¶ 9.  Some of the annual compensation shareholder interviews took place in Ogletree's Los Angeles office; none were conducted in Northern California.  *Id.*

During the relevant time, Ogletree has had (and currently has) seven offices within the state of California, including three in the Central District which have had approximately 60% of the attorneys practicing in California) and only one in the Northern District, with only approximately 26% of the attorneys practicing for the Firm in California.[2]  Straky Decl. ¶ 3.

**C.**   **Knepper Is A Party To An Arbitration Agreement That Assigns To An Arbitrator In Orange County The Question Of The Agreement's Enforceability.**

    **1.**   **Irrefutable evidence disproves Knepper's claim that she did not know she had been presented with the Arbitration Agreement.**

On January 15, 2016, Ogletree sent a notice to Knepper, all other non-equity shareholders, and all other personnel (including lawyers and administrative staff) at their Firm email addresses.  The notice explained and attached two documents:  (i) Ogletree's Open Door Policy; and (ii) the Mutual Arbitration Agreement.  Straky Decl. ¶ 4, Exhs. A-C; Declaration of Gary Berger ("Berger Decl.") ¶ 3, Exh. A.  Recipients saw in three separate places that they would be bound by the Arbitration Agreement if they did not follow the opt-out instructions.  Straky Decl. ¶ 5, Exhs. A and C.  Recipients were requested to acknowledge their understanding of the above.  The cover email stated:  "Please sign and return a copy of the Mutual Arbitration Agreement to your Office Administrator.  Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement."  *Id.*, Exhs. A and C.

---

[2] The California offices and their current attorney populations are Los Angeles (39; Central District); Orange County (31; Central District); Torrance (1; Central District); San Francisco (29; Northern District); Sacramento (5; Eastern District); San Diego (15; Southern District); San Diego Satellite (Downtown) (1; Southern District).  Straky Decl. ¶ 3.

Knepper's email account at the time ("Dawn.Knepper@ogletreedeakins.com") received the notice and attachments on January 15, 2016, at 4:47 a.m.  Straky Decl. ¶ 4, Berger Decl. ¶¶ 4-5, Exh. B.  The "read receipt" message from Knepper's email account shows it was opened that day, at 6:32 a.m.  Straky Decl. ¶ 4, Berger Decl. ¶ 6, Exh. C.

On January 27, 2016, Vicki Myers, the Office Administrator for the Orange County office, forwarded the January 15, 2016 email and attachments (Straky Decl. Exhibits A-C) to all original recipients in that office (including Knepper), and stating:

> If you haven't already done so, please sign and return a copy of the Mutual Arbitration Agreement to me as soon as possible.  Also, please print your name under your signature to ensure that HR files your document in the correct HR file.  As indicated below:  Signing the Agreement signifies that you understand you have the option to opt out and that *if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.  You have the right to opt out of the arbitration program if you wish.  To do so, please read the instructions in the email below.*

Declaration of Vicki Myers ("Myers Decl.") ¶ 4, Exh. A (emphasis added); Berger Decl. ¶ 7, Exh. D.

On March 1, 2016 at 3:41 p.m., Myers sent still another email containing the same text and attachments, and adding a reminder that the signed acknowledgements of understanding should be sent in that day.  Myers Decl. ¶ 5, Exh. B; Berger Decl. ¶ 8, Exh. E.  Within five minutes of issuance, Knepper responded to Myers, stating, "I will turn mine in tomorrow." Myers Decl. ¶ 6, Exh. C; Berger Decl. ¶ 9, Exh. F.  On July 11, 2017—more than a year after she first received the Arbitration Agreement and more than six months before she filed these related actions—Knepper forwarded a copy of the original email, the Arbitration Agreement, and the other attachment to her personal email account:  dmknepper@gmail.com.  Berger Decl. ¶ 10, Exh. G.

## 2. The Arbitration Agreement assigns to the arbitrator in Orange County any issues concerning its enforceability.

The Arbitration Agreement provides, in relevant part:

**4**:  **Commencement of Arbitration & Location of Hearing**. . . .  The arbitration hearing shall be held in or near the city in which Individual is or was last employed by the Firm.

**6**: **Authority of the Arbitrator**.  Except as provided below, *the arbitrator shall have the authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that the Agreement is void or voidable*.  The arbitrator shall not have the authority to hear disputes not recognized by existing law and shall dismiss such claims upon motion by either Party in accordance with the standards and burdens generally applicable in federal district court.

Because this Agreement is intended to resolve the particular dispute as quickly as possible, *the arbitrator shall not have the authority to consolidate the claims of other individuals into a single proceeding, to fashion a proceeding as a class, collective action, or representative action*, or to award relief to a class or group of claimants.  Notwithstanding anything herein or in AAA's rules to the contrary, *any dispute relating to the interpretation, applicability, or enforceability, of this paragraph shall be resolved by a court only and shall not be within the power of the arbitrator to resolve.*

Straky Decl. Exh. C (emphasis added).[3]

## III. ALL FACTORS WARRANT TRANSFERRING THESE RELATED CASES TO THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

### A. Section 1404(a) Sets Forth The Standard For Transfer.

The relevant statute is 28 U.S.C. section 1404(a), which provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The moving party must show that the "convenience of parties and witnesses and interests of justice" are served by transfer. *E.g.*, *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (citing *Van Dusen v. Barack*, 376 U.S. 612, 622 (1964)).  The objective is to serve both the convenience of the parties and witnesses and the interests of justice.  *E.g.*, *Mercury Serv., Inc. v. Allied Bank of Tex.*, 117 F.R.D. 147, 154-55 (C.D. Cal. 1987), *aff'd*, 907 F.2d 154 (9th Cir. 1990).

---

[3] In *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001), the Ninth Circuit held that when faced with a motion to transfer venue based solely on a forum-selection clause in an arbitration agreement, and a plaintiff who claimed to have been unaware of the existence of the arbitration agreement provision, the court should first determine the enforceability of the arbitration agreement.  Here, however, Ogletree's transfer motion is not based solely on the venue provision, and the Arbitration Agreement lawfully assigns to the arbitrator the duty to determine the Arbitration Agreement's enforceability.

1    Courts consider the following factors:  (i) whether the transferee district is one where the

2    action might have been brought; (ii) the convenience of the parties and witnesses; and

3    (iii) whether transferring will promote the interest of justice.  *E.g.*, *Goodyear Tire & Rubber Co.*

4    *v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992), *citing Mercury*, 117

5    F.R.D. at 154-55.

6        **B.    Each Of These Factors Militates In Favor Of Transfer.**

7    All relevant factors point to venue in the Central District.

8        **1.    Knepper's claims "might have been brought"—indeed, *should* have**

9        **been brought (if brought in a court at all)—in the Central District.**

10   A district court is one in which the action originally "might have been brought" if:  (i) it

11   has subject matter jurisdiction; (ii) defendants would have been subject to personal jurisdiction

12   there; and (iii) venue would have been proper there.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44

13   (1960); *Commercial Lighting Prods., Inc. v. U.S. Dist. Court*, 537 F.2d 1078, 1079 (9th Cir.

14   1976).

15   Here, all three requirements are satisfied.  First, the Central District has subject matter

16   jurisdiction over plaintiff's federal discrimination claims, as they raise a federal question.

17   Second, given Ogletree's significant business operations in the Central District (with more than

18   121 attorneys in its Orange County and Los Angeles County offices during the period covered

19   by the claims), the criteria for "minimum contacts" are amply satisfied.  Straky Decl. ¶ 3.  *See,*

20   *e.g.*, *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (*in personam*

21   jurisdiction is satisfied for a defendant that had certain minimum contacts with the forum).

22   Third, venue would have been (and is) proper in the Central District, because the alleged

23   unlawful practices (*i.e.*, the alleged discrimination, harassment, and retaliation against Knepper)

24   occurred there.  *See* 28 U.S.C. § 1391(b)(2); *see also* 28 U.S.C. § 1391(c)(2) (for purposes of

25   venue, a corporate defendant is deemed to reside in any judicial district in which it is subject to

26   personal jurisdiction at the time the action is commenced).

27

28

**2.** **Transferring these related cases will promote the interests of justice and serve the convenience of the parties.**

Courts in considering transfer weigh several overlapping factors, including: (i) plaintiff's initial choice of forum; (ii) the convenience of the witnesses; (iii) where the events took place, and the relative ease of access to sources of proof; (iv) the convenience of the parties; and (v) all other practical considerations that make litigation easier, expeditious and inexpensive. *E.g.*, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842-43 (9th Cir. 1986); *Skyriver Tech. Solutions, LLC v. OCLC Online Comput. Library Ctr., Inc.*, 2010 WL 4366127, *2 (N.D. Cal. Oct. 28, 2010). Each of these factors militates in favor of transfer.

**a.** **The convenience of the parties and witnesses favors transfer.**

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a). Importantly, '[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Morris v. Safeco Ins. Co.*, 2008 WL 5273719, at *4 (N.D. Cal. Dec. 19, 2008) (citation omitted).

Here, the convenience of the parties and witnesses strongly favors transfer to the Central District. Knepper's Complaint identifies a significant number of witnesses from the Central District. She also alleges that four Ogletree shareholders from the Central District perpetrated, witnessed, or were told about alleged discrimination, harassment and/or retaliation. Knepper's allegations about Watt pervade the Complaint, and Watts' statements and conduct supposedly were witnessed within the Orange County office, which included approximately 109 attorneys and staff during the years at issue. Cmplt. ¶¶ 106, 109; Straky Decl. ¶¶ 3, 7. By contrast, Knepper's Complaint does not identify a single person in the Northern District who allegedly engaged in or witnessed any actionable conduct.[4]

---

[4] Other relevant witnesses work and live outside of California. Straky Decl. ¶¶ 7-10. As such, neither the Northern nor Central District of California is convenient to their testimony.

1    From 2013 to her resignation in 2018, Knepper was responsible at various times for

2 managing the work of eight paralegals in the Orange County office, four of whom are no longer

3 with the Firm, but still reside within the Central District.  Myers Decl. ¶ 3.

4    Proceeding in the Northern District therefore will impose substantial burdens on and

5 inconvenience the significant number of witnesses who will be forced to travel for purposes of

6 litigation.  It also will force both parties to incur significant costs associated with such travel.  In

7 addition, Ogletree would have to compensate its employee witnesses for lost work time, travel,

8 lodging, meals, and other expenses related to attending proceedings in the Northern District.

9 Accordingly, the Court should conclude that the convenience of the parties and the witnesses—

10 especially former Ogletree shareholders and employees who worked in the Central District—

11 strongly favors transfer to it.

12    **b.**      **The Central District has a significantly greater relationship to**

13              **these related actions than the Northern District.**

14    The claims all arose within the Central District, where Knepper lives and worked, and

15 where the vast majority of witnesses live and work.  *See, e.g.*, *Marinus v. Altria Grp. Distrib.*

16 *Co.*, 2012 WL 588705, at *5 (N.D. Cal. Feb. 22, 2012) (ordering transfer even though the

17 employer had contacts in all four judicial districts in California and operated state-wide; it had

18 stronger connections to the Central District than it did to the Northern District because plaintiffs

19 worked out of the offices within the Central District).

20    **c.**      **The interests of justice strongly favor transfer to the Central**

21              **District, as it is the only court that can enforce the parties'**

22              **Arbitration Agreement as written and is less congested and**

23              **backlogged for trial than the Northern District.**

24    Justice will be served by transferring these related cases to the Central District because

25 that is the only district court that can compel Knepper to honor her promise to arbitrate her

26 dispute with Ogletree in Orange County.  *E.g.*, *Textile Unlimited, Inc. v. A..BMH & Co.*, 240

27 F.3d 781, 785 (9th Cir. 2001) (district court cannot compel arbitration outside of its district).

28 Knepper in the RDJ disputes knowing she had been presented with an Arbitration Agreement.

1   RDJ ¶ 32 ("[I] had no knowledge of [the] existence [of the Mutual Arbitration Agreement] until

2   well after the deadline the Firm gave to opt out . . . ."). That is a demonstrable falsehood.

3   Computer records show that Knepper opened the initial email with the Arbitration Agreement,

4   received two reminders about the Arbitration Agreement; drafted and sent a written response to

5   one of the reminders acknowledging the Arbitration Agreement's existence; and even forwarded

6   the introductory email and Arbitration Agreement to her personal email account more than nine

7   months before she filed these related actions. *See* Section II.C.1 *supra*. The interests of justice

8   favor transferring these cases to the court that can enforce the Arbitration Agreement's venue

9   provision. Justice is served by not incentivizing litigants such as Knepper to circumvent their

10   contractual obligations by initiating litigation in a different jurisdiction perceived as more

11   favorable to them. *E.g.*, *Homestake Lead Co. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131,

12   1144 (N.D. Cal. 2003) ("This court shares the concern of the Seventh Circuit that under such an

13   interpretation any party to an arbitration agreement could avoid the effect of the agreed-to forum

14   merely by filing suit in a different district. This in turn could lead to the parties racing to

15   different courthouses to obtain what each thinks is the most convenient forum for it, in disregard

16   of its contractual obligations.").

17   The forum-selection clause, without more, supports transfer "in the interest of justice."

18   *See, e.g.*, *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1093 (D. Haw. June 13,

19   2011) ("Therefore, the court orders this case transferred to the Northern District of Texas for

20   further proceedings. This transfer would cure any venue issue and would allow the receiving

21   court to decide the issues raised by the pending motion without concern about overriding the

22   parties' agreed-upon forum selection."); *Barranco v. 3D Sys. Corp.*, 2014 WL 806263, at *11

23   (D. Haw. Feb. 28, 2014) (transferring case to the location specified in the arbitration agreement

24   to adjudicate the motion to compel arbitration was "in the interests of justice"); *Alaka'i Mech.*

25   *Corp. v. RMA Land Constr., Inc.*, 2014 WL 12729169, at *6 (D. Haw. Oct. 22, 2014) (denying

26

27

28

1  motion to compel arbitration; the arbitration clause specified venue elsewhere; defendants
2  should have moved to transfer).[5]

3     Another factor weighing in favor of transfer here is "the availability of compulsory
4  process to compel attendance of unwilling non-party witnesses." *Jones v. GNC Franchising,*
5  *Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  The ability of a court in another jurisdiction to
6  subpoena witnesses militates in favor of transfer.  *See, e.g., Evancho v. Sanofi-Aventis U.S. Inc.*,
7  2007 WL 1302985, at *3 (N.D. Cal. May 3, 2007) (granting defendant's motion to transfer
8  FLSA action to New Jersey, finding that the convenience of witnesses weighed "substantially in
9  favor of transfer" when a large number of critical witnesses lived and worked in New Jersey,
10 and a greater proportion of the putative class members lived and worked on the East Coast than
11 on the West Coast); *Multistate Legal Studies, Inc. v. Marino*, 1996 WL 786124, at *11-12 (C.D.
12 Cal. Nov. 4, 1996) (granting motion to transfer to New York, because New York was more
13 convenient for non-party witnesses and such witnesses were beyond the subpoena power of the
14 California courts).

15    A venue that has "absolute subpoena power for both depositions and trial" is preferable to
16 one that does not.  *See In re: Volkswagen of Am., Inc*., 545 F.3d 304, 316 (5th Cir. 2008).  In
17 2013, Rule 45 of the Federal Rules of Civil Procedure was amended to permit courts to issue
18 nationwide deposition subpoenas, provided that the deposition takes place within 100 miles of a
19 witness's residence.  But Rule 45 still does not empower courts to issue nationwide trial
20 subpoenas, because trials (unlike depositions) cannot be moved to within 100 miles of a
21 witness's residence.

22    Here, the non-party witnesses that both parties are most likely to need to subpoena are
23 former Ogletree shareholders and employees.  These individuals, including the paralegals whose

24 _____
   [5] No further analysis regarding contract formation or enforceability is necessary for this Court to
25 appropriately consider the Arbitration Agreement's forum-selection clause.  Any gateway issues
   reserved to a court should be addressed by the Central District upon transfer.  *See* Straky Decl.
26 Exh. C, Section 6.  If, however, this Court believes that it cannot consider the forum-selection
   clause without first finding the Arbitration Agreement enforceable as a whole, the Court should
27 still find transfer warranted.  The instant motion is in no way dependent on the forum-selection
   clause.  Rather, transfer clearly is warranted based on application of the section 1404 factors, as
28 this motion demonstrates.

work Knepper supervised and the associate attorneys with whom she worked, who have left the Firm, are likely to reside within 100 miles of the Central District of California, Southern Division. Straky Decl. ¶¶ 3, 7-10; Myers Decl. ¶ 3. The inability to subpoena them for trial could materially limit Ogletree's ability to present its case at trial.

An additional factor to consider in the interest of justice is the relative court congestion and time to trial in each forum. *Roe v. Intellicorp Records, Inc.*, 2012 WL 3727323, at *2 (N.D. Cal. Aug. 27, 2012) (transferring putative class action). The Northern District of California is notably more congested and the time to trial is longer than in the Central District of California, according to the Federal Court Management Statistics for the 30 days ending September 30, 2017, the most current data available:

| District | Average Caseload Per Judge | Time to Trial |
|---|---|---|
| Northern District of California | 657 | 26.7 months |
| Central District of California | 442 | 19.6 months |

*See*
http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2017.pdf
(last visited 4/15/2018). This, too, supports transfer to the Central District.

> **d.**   **Even in the absence of the Arbitration Agreement (and forum-selection clause), Knepper's choice of forum would be entitled to little deference here.**

Ogletree anticipates that Knepper will contend that this Court should defer to her choice of forum. Where the parties have contractually agreed upon a forum, however, "the plaintiff's choice of forum merits no weight" and the Court "should not consider arguments about the parties' private interests." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 575, 581-82 (2013).

And even laying that aside, while a plaintiff's choice of forum sometimes is entitled to weight, "when an individual brings a derivative suit or represents a class, the named plaintiff's

1    choice of forum is given less weight. . . .  If the operative facts have not occurred within the

2    forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is

3    entitled to only minimal consideration."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  In

4    addition, "[i]f there is any indication that plaintiff's choice of forum is the result of forum

5    shopping, plaintiff's choice will be accorded little deference."  *Williams v. Bowman*, 157 F.

6    Supp. 2d 1103, 1106 (N.D. Cal. 2001); *accord Wireless Consumers All., Inc. v. T-Mobile USA,*

7    *Inc.*, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003) ("Another related 'interest of justice'

8    factor is the prevention of forum shopping.  In fact, the transfer statute has a built-in mechanism

9    to remedy the evils of forum shopping by giving little or no weight to the plaintiffs' choice of

10   forum away from home and without ties to the controversy.").

11        Those factors describe these related cases.  First, the underlying action is a putative class

12   action.  In class actions, venue is determined based on the named plaintiff(s), without regard to

13   unnamed putative class members.  *Levine v. Entrust Grp., Inc.*, 2012 WL 6087399, at *4 (N.D.

14   Cal. Dec. 6, 2012) ("[d]etermining which potential venue is appropriate should be based on the

15   plaintiffs in the class action—not absent class members"); *Marinus v. Altria Group Distrib. Co.*,

16   2012 WL 588705, at *5 (N.D. Cal. Feb. 22, 2012) (granting motion to transfer to the Central

17   District of California even though at least one named plaintiff worked some periods of time in

18   the Northern District; "Here, plaintiffs have filed a class action alleging wage-and-hour claims

19   under state law, in a district where they do not reside and where they (largely) did not work.").

20        Second, the operative facts have not occurred in the Northern District.  The Complaint

21   contains dozens of paragraphs regarding discriminatory, harassing, and retaliatory conduct that

22   allegedly took place in Orange County, allegedly perpetrated or witnessed by numerous persons

23   who also live and work in the Central District.

24        Third, Knepper's choice of venue suggests forum shopping.  The only nexus to the

25   Northern District in the Complaint is the conclusory recitation—bereft of supporting facts—that

26   "Defendant conducts substantial business in San Francisco and a substantial part of the events

27   and omissions giving rise to the claims alleged herein occurred in this district."  Cmplt. ¶ 2.

28

1   For all these reasons, Knepper's preference for the Northern District succumbs to the Central

2   District's overwhelming greater nexus to the events and witnesses in these related cases.

3   **C.     The Title VII Claim Pleaded Does Not Alter The Analysis Or Change The**

4           **Result.**

5           Knepper probably will contend that her choice of forum should be given greater

6   deference because one of her nine causes of action is a Title VII claim.[6]  The presence of the

7   Title VII claim does not change the result.  Title VII's venue provision does not displace or

8   supersede the traditional section 1404 analysis, but simply is to be considered in analyzing the

9   "interests of justice" prong discussed above.  *Hong v. Morgan Stanley & Co., LLC*, 2012 WL

10  5077066, at *2 (N.D. Cal. Oct. 18, 2012).

11          Because Knepper worked in the Orange County office since 2012, the files related to the

12  work she performed are maintained there, meetings of the office personnel took place there, and

13  personnel issues associated with that office arose there.  *See* Straky Decl. ¶ 11; Myers Decl. ¶ 2.

14  Knepper does not contend she would have worked in another location (let alone the Northern

15  District) were it not for alleged discrimination, harassment, or retaliation.  In cases with Title

16  VII claims, courts routinely grant intrastate motions to transfer where—as here—the alleged

17  discrimination took place in the other district, and is also supported by the overall convenience

18  of the parties and interest of justice.  *See Hong*, 2012 WL 5077066, at *6 (granting motion to

19  transfer to Central District of California in a Title VII case; "[C]onsidering the overall

20  convenience and interests of justice, and in light of the fact that the circumstances about which

21  Plaintiff is suing transpired almost entirely in the Central District, the Court finds that transfer is

22  warranted."); *Montante v. LaHood*, 2013 WL 12184149, at *4 (S.D. Cal. Jan. 17, 2013)

23  (granting motion to transfer Title VII case to the Central District of California even though

24  plaintiff resided in the chosen forum; "[I]n light of the fact that all of the actions giving rise to

25

26  _____

[6] Title VII's venue provision states that actions may be brought "in any judicial district in the
State in which the unlawful employment practice is alleged to have been committed, in the
27  judicial district in which the employment records relevant to such practice are maintained and
administered, or in the judicial district in which the aggrieved person would have worked but for
28  the alleged unlawful employment practice . . . ."  42 U.S.C. § 2000e-5(f)(3).

1  Plaintiff's claim arose in the Central District and the location of all of the witnesses, aside from

2  Plaintiff, [is] in the Central District, the Court finds that Defendant has made a strong showing

3  of inconvenience to litigate the action in this District."); *Pinckney v. Yuba Comm. Coll.*, 2008

4  WL 5170444, at *3 (N.D. Cal. Dec. 9, 2008) (granting motion to transfer Title VII case venue to

5  Eastern District of California; "Although [plaintiff's] choice of forum should be given some

6  deference, his interest in having the litigation in the Northern District is limited.").

7  **IV.    <u>CONCLUSION</u>**

8      Ogletree respectfully requests that this Court transfer the related cases to the United

9  States District Court for the Central District of California, Southern Division.

10

11  DATED:  April 27, 2018                    PAUL HASTINGS LLP

12
                                    By: /s/ Deborah S. Weiser
13                                        _____
                                          Deborah S. Weiser
14
                                    By: /s/ Paul W. Cane, Jr.
15                                        _____
                                          Paul W. Cane, Jr.
16
                                    By: /s/ Nancy L. Abell
17                                        _____
                                          Nancy L. Abell
18
                                    Attorneys for Defendant
19                                  OGLETREE, DEAKINS, NASH,
                                    SMOAK & STEWART, P.C.
20

21  LEGAL_US_W # 93874281.6

22

23

24

25

26

27

28